**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JULIUS J. MANNO** | § | |
| | § | |
| **v.** | § | **A-11-CA-347 LY** |
| | § | |
| **BAC HOME LOANS SERVICING, LP** | § | |
| **AND BANK OF AMERICA, N.A.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants BAC Home Loans Servicing, LP, and Bank of America, N.A.'s Motion to Dismiss or Alternatively, Motion for More Definite Statement (Clerk's Doc. No. 4) filed May 4, 2011; Plaintiff's Response to Defendants BAC Home Loans Servicing, LP, and Bank of America, N.A.'s Motion to Dismiss or Alternatively, Motion for More Definite Statement (Clerk's Doc. No. 7) filed May 16, 2011; and Defendants' Reply to Plaintiff's Response to Defendants BAC Home Loans Servicing, LP, and Bank of America, N.A.'s Motion to Dismiss or Alternatively, Motion for More Definite Statement (Clerk's Doc. No. 9) filed May 27, 2011. The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

## I.  FACTUAL BACKGROUND[1]

This is a case alleging the wrongful foreclosure of the Plaintiff's home. Julius J. Manno purchased the home in Travis County, Texas, on May 8, 2008. At some point, Plaintiff allowed the loan to go into default and in August of 2009, the loan on the property was referred to the legal counsel for BAC Home Loans Servicing, LP, and Bank of America, N.A. (the "Bank") to initiate

---

[1]The facts set out here are taken from the original petition, as the Court must accept the Plaintiff's allegations as true in reviewing the motion to dismiss.

foreclosure proceedings. Manno later received notice that the property would be sold at a foreclosure sale on October 6, 2009. To prevent the sale of the property at the foreclosure sale, beginning on September 4, 2009, Manno went to the Bank's location at 2501 South Congress Avenue, Austin, Texas, multiple times in an effort to negotiate with the Bank and get enrolled in a loan workout program. Manno alleges that on September 15, 2009, the Bank's representatives at the South Congress location informed him that he would be given a Loan Reinstatement Agreement ("Agreement") which would be faxed to him the next day. Manno alleges that the Bank's representative told him that the Bank would not foreclose on the property pending a payment of $3,387.80 due on November 9, 2009. Manno alleges that the Bank reconfirmed this agreement several times between September 15, 2009 and October 6, 2009, but the Bank repeatedly failed to send Manno the Agreement paperwork to be signed. On October 6, 2009, the Bank sold the property through a non-judicial foreclosure sale. On November 9, 2009, Manno went to the Bank's South Congress location to make the payment and reinstate the loan. The Bank denied that the Agreement was in effect and refused to take Manno's payment.

On March 23, 2011, Manno filed suit in the 345th District Court, Travis County, Texas, against the Bank. Plaintiff's Original Petition alleged breach of contract, promissory estoppel, negligent misrepresentation, unfair debt collection violations pursuant to Chapter 392 of the Texas Finance Code, violations of the Deceptive Trade Practice Act, and breach of fiduciary duty. On April 28, 2011, the Bank removed this case to federal court. The Bank now moves to dismiss some of Plaintiff's claims, and alternately moves the Court to require Manno to file a more definite statement of his claims.

## II.  MOTION TO DISMISS

The Bank moves to dismiss based upon Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### A.      Claims Brought Pursuant to the Texas Finance Code

The Bank first argues that Manno has failed to allege specific facts sufficient to support his claims brought pursuant to sections 392.301 and 392.302 of the Texas Finance Code.  Section 392.301 of the Texas Finance Code entitled "Threats or Coercion" reads as follows:

> (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:
>
>> (1) using or threatening to use violence or other criminal means to cause harm to a person or property of a person;

(2) accusing falsely or threatening to accuse falsely a person of fraud or any other crime;

(3) representing or threatening to represent to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute;

(4) threatening to sell or assign to another the obligation of the consumer and falsely representing that the result of the sale or assignment would be that the consumer would lose a defense to the consumer debt or would be subject to illegal collection attempts;

(5) threatening that the debtor will be arrested for nonpayment of a consumer debt without proper court proceedings;

(6) threatening to file a charge, complaint, or criminal action against a debtor when the debtor has not violated a criminal law;

(7) threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or

(8) threatening to take an action prohibited by law.

Section 392.302 of the Finance Code entitled "Harassment; Abuse" provides that:

In debt collection, a debt collector may not oppress, harass, or abuse a person by:

(1) using profane or obscene language or language intended to abuse unreasonably the hearer or reader;

(2) placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number;

(3) causing a person to incur a long distance telephone toll, telegram fee, or other charge by a medium of communication without first disclosing the name of the person making the communication; or

(4) causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

Manno alleges that he "has been constantly harassed, threatened, and abused by the [Bank's] attorneys, who are seeking to obtain money from him to satisfy a debt that has already been satisfied." The Bank alleges this is insufficient to sustain a claim pursuant to the Texas Finance Code. The Court disagrees, as Manno has pled facts sufficient to substantiate a right to relief above the speculative level, although he could plead more facts to substantiate these claims. Manno has requested that he be allowed to file an Amended Complaint. *See* Plaintiff's Response at p. 7. The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires," FED. R. CIV. P. 15(a), although leave to amend "is by no means automatic," *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (internal quotation marks and citation omitted). "[A] district court may refuse leave to amend a complaint if the complaint as amended would be subject to dismissal." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009). Accordingly, Plaintiff's Motion to File an Amended Complaint is GRANTED with regard to his Texas Finance Code claims.

### B.     DTPA Claim

The Bank next claims that Manno has failed to plead facts sufficient to meet the definition of a "consumer" as required to bring a DTPA claim. The Bank asserts that a loan applicant does not qualify as a "consumer" and that borrowing money is not a good or service as required to bring a DTPA claim. Manno responds that his DTPA claims do not relate to a loan application or attempt to seek a loan modification, and that Plaintiff's real property, acquired for his use, forms the basis of his complaint.

In order to establish a claim under the DTPA, a plaintiff must establish that (1) he or she is a consumer, (2) the defendant can be sued under the DTPA, (3) the defendant committed a false,

misleading, or deceptive act or practice, and (4) the act or practice was a producing cause of the plaintiff's damages. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). A person qualifies as a consumer under the DTPA by meeting two requirements. First, the person must seek or acquire goods or services by lease or purchase. Tex. Bus. & Com. Code Ann. § 17.45(4). Second, the goods or services sought or acquired must form the basis of the party's complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987). Whether a person meets these requirements is a question of law. *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App. – Fort Worth 1991, writ denied); *see also Ortiz v. Collins*, 203 S.W.3d 414, 424 (Tex. App. – Houston [14th Dist.] 2006, no pet.). In determining whether a plaintiff is a consumer, the focus is on the plaintiff's relationship to the transaction. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997).

Generally, a person cannot qualify as a consumer if the underlying transaction is a loan because money is considered neither a good nor a service. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173–74 (Tex. 1980) (holding that the refinance of a car loan did not confer consumer status on the debtor). Additionally, obtaining an extension of credit does not qualify one as a "consumer." *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984); *Maginn v. Norwest Mortgage Inc.*, 919 S.W.2d 164, 166 (Tex. App. – Austin 1996, no writ). Other courts have applied the *Riverside* holding to modifications of existing loans, holding that loan modifications are neither goods nor services and cannot form the basis of a claim under the DTPA. *See Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. – Fort Worth 2007, pet. denied); *see also Broyles v. Chase Home Finance*, No. 3:10–CV2256–G, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011) ("subsequent actions related to mortgage accounts—for example, extensions of

further credit or modifications of the original loan—do not satisfy the 'good or services' element of the DTPA"); *Cavil v. Trendmaker Homes, Inc.*, No. G–10–304, 2010 WL 5464238, at *4 (S.D. Tex. Dec. 29, 2010) ("a mortgage or modification of a mortgage is not a good or service under the DTPA"; *Ayres v. Aurora Loan* Services, LLC, No. 6:10-CV-593, 2011 WL 2120000, at *3 (E.D. Tex. May 27, 2011) ("refinancing is simply an extension of credit that does not qualify Plaintiff as a consumer"). The Fifth Circuit has also held that pure loan transactions are not covered by the DTPA. *Walker v. FDIC*, 970 F.2d 114, 123-24 (5th Cir. 1992).

In this case, Manno asserts that he qualifies as a consumer because his real property qualifies as a "good" which is the basis of his complaint and that his claims do not pertain to a loan application or the attempt to seek a loan modification. *See* Response at p. 3-4. In support of his argument, Manno relies upon *Flenniken v. Longview Bank and Trust*, 661 S.W.2d 705, 706 (Tex. 1984). *See also Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex. 1982) (purchaser's "objective in the transaction was the purchase of a dump truck [and] . . . financing was merely the means of making that purchase").

*Flenniken* and its progeny, however, are inapplicable in the instant case. In *Flenniken*, the plaintiffs executed a note and materialman's lien to a builder for the construction of a home on their property. *Id.* at 706. On the same day, the builder assigned the note and the lien to a bank in return for interim financing on the construction job. *Id.* The bank disbursed the entire loan amount to the builder despite the fact that he completed only twenty percent of the work. *Id.* The builder subsequently abandoned the job, and the plaintiffs stopped paying on the note. *Id.* The bank then foreclosed on the property under the terms of the deed of trust. *Id.* The bank later conceded that the foreclosure was wrongful. *See Longview Bank & Trust Co. v. Flenniken*, 642 S.W.2d 568, 570 n.

7

2 (Tex. App. — Tyler 1982), rev'd, 661 S.W.2d 705 (Tex. 1983). The Texas Supreme Court held the bank liable under a DTPA cause of action without overruling *Riverside*. *Flenniken*, 661 S.W.2d at 706. It did not differentiate between the transaction between the plaintiffs and the builder, and the builder's transaction with the bank, but instead, viewed the transaction as a whole from the buyer's perspective. *Id.* The court reasoned that the plaintiffs were consumers because they "did not seek to borrow money; they sought to acquire a house." *Id.* at 707–08; *but see Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 333 (Tex. 1983) (in a case with facts almost identical to those in *Flenniken*, the Texas Supreme Court decided that, because the bank, which did not concede the foreclosure was wrongful, had a contractual right to foreclose when it did, it was not liable under DTPA).

The rationale in *Flenniken* is inapplicable here. Although Manno tries to argue that his real property qualifies as a good, it is clear from the Petition that Manno is actually complaining about a failure to extend credit to him. Manno asserts that Bank of America "misrepresented the authority of a representative or agent to negotiate the final terms of a consumer transaction" in that the representative erroneously stated that the Loan Reinstatement Agreement was in place after foreclosure. *See* Petition at p. 10. The basis of Manno's complaint is the failure to re-negotiate his loan as allegedly promised. Manno does not complain about a defect with his house, or that he was denied a house he borrowed money to buy because of an error by the bank as occurred in *Flenniken*. Rather, at the time of the acts of which he complains, Manno already owned the house subject to the Bank's mortgage interest. As a matter of law, Manno's real property is not the basis of his complaint. Thus, Manno does not qualify as a "consumer" under the DTPA and does not have standing to bring a DTPA claim. *See Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (distinguishing cases where complaint is with regard to the tangible property as opposed to

a loan, the court held that plaintiff who borrows money, even if incidental to a completed mortgage loan, is not a consumer for purposes of the DTPA. In so doing, the court noted the "strict interpretation" line of cases, which declined to find similarly situated loan recipients were consumers, represented "the wisest and most logical course."); *Everson v. Mineola Comm. Bank, S.S.B.*, No. 12-05-334-CV, 2006 WL 2106959 (Tex. App. – Tyler, July 31, 2006, review denied) (court found homeowners were not consumers based on mortgage or allegedly forced purchase of purchase mortgage insurance where DTPA claim had nothing to do with either the property or the insurance, but involved wrongful foreclosure); *Fix v. Flagstar, F.S.B.*, 242 S.W.3d 147, 160-61 (Tex. App. – Ft. Worth 2007, review denied) (refinancing of purchased home is not a good or service for purposes of qualifying as a consumer under the DTPA). The Court therefore recommends dismissal of Manno's DTPA claim.

### C. Breach of Fiduciary Duty Claim

The Bank lastly asserts that Manno cannot bring a breach of fiduciary duty claim because Texas law does not recognize a fiduciary relationship between a mortgagor and mortgagee. *Marketic v. U.S. Bank Nat. Ass'n*, 436 F.Supp.2d 842, 855 (N.D. Tex. 2006). Manno contends that in this case, a fiduciary relationship between Manno and the Bank existed because he had a special relationship—beyond the scope of a mortgagor/mortgagee relationship—with the Bank.

Manno asserts that he has established a special relationship between himself and the Bank's representative. Manno states in his Petition that after being notified of the potential foreclosure, he was "working closely with Deyenna Dragustinovis, a loan officer at the South Congress location, and had been working with her since the inception of the loan. Manno contends he had a special working relationship with Ms. Dragustinovis, "as she had been his personal banker for several years

9

and helped him to obtain multiple loans during that time." *See* Petition at p. 3. Manno asserts that the Bank breached the fiduciary relationship with him when "Ms. Dragustinovis told Plaintiff that the Bank would not foreclose on the Property, and that the Bank would be able to float the Loan until November as part of the agreement." *Id.*

A fiduciary relationship is an extraordinary one and will not be lightly created. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. – Houston [14th Dist.] 1997, pet. denied). A fiduciary relationship may arise as a matter of law in certain formal relationships. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam). However, because not every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship, the law also recognizes the existence of an informal or confidential fiduciary relationship. *Id.* at 330. An informal fiduciary relationship may arise from a moral, social, domestic, or purely personal relationship of trust and confidence. *Id.*; *see Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992). The moral, social, domestic, or personal relationship upon which the informal or confidential relationship is predicated "'must exist prior to, and apart from the agreement made the basis of the suit.'" *Meyer*, 167 S.W.3d at 331 (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)); *see Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App. – Fort Worth 2004, pet. denied) ("In other words, there must be a pre-existing special relationship of trust and confidence that is betrayed in later dealings.").

A person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as a personal friendship. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. – Houston [14th Dist.] 1997, pet. denied); *see*

*Ins. Co. of North Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (providing that "confidential relationships may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest"). Moreover, mere subjective trust is insufficient to establish a confidential relationship that gives rise to a fiduciary duty. *Meyer*, 167 S.W.3d at 331.

In this case, Manno contends there was an informal fiduciary relationship between him and the Bank based upon the fact that Ms. Dragustinovis had been his personal banker for several years and that she had helped him secure loans in the past. As a matter of law, this is insufficient to establish an informal fiduciary relationship with the Bank. While Manno pled that his relationship with Ms. Dragustinovis pre-dated the alleged representations and actions which are the basis of this suit, he has failed to plead more than subjective trust on his part and failed to plead any additional personal friendship or other facts supporting finding an informal fiduciary relationship. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594–95 (Tex. 1992) (finding that the fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship, even if the relationship has been a cordial one, and one of long duration). Manno has merely pled a business relationship of some duration prior to the facts upon which he bases this cause of action, which is insufficient to find the existence of a fiduciary relationship.

Additionally, the relationship between a bank and its customers does not usually create a special or fiduciary relationship. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex.App. – Houston [1st Dist.] 1996, no writ); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex. App. – Houston [1st Dist.] 1991, no writ). "[W]hen a

special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Farah*, 927 S.W.2d at 675. Manno has failed to plead sufficiently to meet this standard. Accordingly, the Court recommends that Plaintiff's claim for breach of fiduciary duty be dismissed.

## III. RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Court GRANT Defendants BAC Home Loans Servicing, LP and Bank of America, N.A.'s Motion to Dismiss or Alternatively, Motion for More Definite Statement (Clerk's Doc. No. 4) **IN PART** and **DISMISS WITH PREJUDICE** Plaintiff's DTPA and Breach of Fiduciary Duty Claims for failure to state a claim on which relief may be granted. The Court **FURTHER RECOMMENDS** that the District Court **GRANT IN PART** Plaintiff's Motion for Leave to Amend his Complaint (Clerk's Doc. No. 9), related only to his Texas Finance Code claim.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court. *See* 28 U.S.C. § 636(b)(1)©; *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of August, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE